## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Victoria McCartney; Shane McCartney; Guerrilla Entertainment LLC, d/b/a Midwest Drone Racing, | **Civil File No. 25-02245 (MJD/DJF)** |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW AND ORDER** |
| Taylor L. McGowan, in his official capacity as Martin County Attorney, or his successor; Martin County; City of Welcome; Welcome Historical Society, | |
| Defendants. | |

Elizabeth A. Nielsen, Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Counsel for Plaintiffs.

Kristin C. Nierengarten, Maxwell Scott Blosser, Squires Waldspurger & Mace, P.A., Counsel for Defendants Taylor L. McGowan and Martin County.

## I.    INTRODUCTION

This matter is before the Court on Defendants Taylor L. McGowan's and Martin County's (collectively "the County") Motion to Dismiss.  (Doc. 18.)  Oral argument was held via Zoom on October 1, 2025.

## II.    BACKGROUND

The following facts are relevant to the County's motion to dismiss.  The Court takes all facts alleged in the Amended Complaint as true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).  The Court also takes judicial notice of judicial

opinions and public records.  <u>Stutzka v. McCarville</u>, 420 F.3d 757, 760 n.2 (8th Cir. 2005).  Accordingly, the Court need not accept pleaded facts when they are contradicted by public records.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663-64 (2009) (stating that "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense") (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).

### A. Plaintiffs' Relationship with the City of Welcome, Minnesota

Plaintiffs Shane and Victoria McCartney have resided in Martin County, Minnesota for about five years.  (Amend. Compl. ¶ 13.)  Martin County is the number one hog-producing county in Minnesota.  (<u>Id.</u> ¶ 16.)  In 2022, Plaintiffs decided to participate in a partially government-sponsored program called "Going Hog Wild in Martin County," which distributes "dozens of artistically painted cement pigs throughout the county as a promotion for Martin County." (<u>Id.</u> ¶¶ 14, 17-18.)  Plaintiffs wanted to participate to support the community and to promote their Midwest Drone Racing business.  (<u>Id.</u> ¶ 15.)

At the March 2022 meeting of the Welcome Historical Society ("WHS"), Plaintiffs' gift of a pig statue to be located at the WHS Museum entrance was unanimously accepted.  (<u>Id.</u> ¶ 52.)  Plaintiffs then spent approximately $2400 for a cement pig and artwork on the pig that was to be located at the WHS Museum.

(Id. ¶¶ 54-56 (including photographs of the pig statue), 70.)  However, on May 19, 2022, one week before the public unveiling of the pig statues, Plaintiffs received an email that stated the City of Welcome owned the building the WHS Museum occupied and that the city council did not want the McCartney's pig placed at the WHS Museum.  (Id. ¶¶ 60-61 (citing Pl. Ex. 2).)[1]

Shortly after receiving the email, Plaintiffs met with the WHS president who stated the WHS "was not willing to 'bite the hand that feeds them' since the City of Welcome owns the building WHS occupies, and the City of Welcome pays the utilities for WHS."  (Id. ¶ 72.)  Although Plaintiffs were free to place the pig in the City of Welcome, they could not place it on city property.  (Id. ¶ 77 (quoting July 19, 2022 City Council minutes).)

Plaintiffs did not believe they needed the City's approval to place a pig at the WHS Museum because they had previously purchased and installed new front doors for the WHS without the City of Welcome's approval.  (Id. ¶¶ 38, 82.)

Plaintiffs have had other issues with the City, including lack of appropriate responses to trespassing claims; Shane being told he could not run for city office;

---

[1] Plaintiffs' Exhibits are attached to the Amended Complaint at Docket Nos. 4-1 to 4-5.  The Court will cite the Exhibits as "Pl. Ex. 1," "Pl. Ex. 2," etc., which are the original numbers Plaintiffs gave the exhibits.

3

being told they are not residents of Welcome and therefore cannot vote in the city; and threats that their utilities will be cut off if they try to detach their property from the City.[2]  (Id. ¶¶ 84-93.)  Plaintiffs have filed statements with the State Attorney General and the County Sheriff's Office about  these issues.  (Id. ¶ 91.)  They feel they have been put in a "compromised situation" by the lack of positive response to their efforts to contribute to the community.  (Id. ¶¶ 92-93.)

In December 2022, due to concerns about lack of policing and paying taxes to a city they could not vote in, Plaintiffs petitioned the City of Welcome for detachment.  (Id. ¶ 89.)  The petition was denied.  (Id.)  Plaintiffs then filed complaints against the City and City officials with the State and County, which did not result in any criminal charges.  (Id. ¶¶ 91, 92.)

### B.    The March 4, 2024 Fox Lake Township Board Meeting

On March 4, 2024, Plaintiffs attended a Fox Lake Township Board meeting to gain the township's support for detachment.  (Amend. Compl. ¶ 95.)  Diane Glidden, Welcome city council member Elroy Glidden's wife, was in the building

---

[2] Under Minn. Stat. § 414.06, property owners may initiate a proceeding to detach their property from within the municipality in which it is situated and, with administrative law judge approval, have the property become part of the town which it abuts.

4

to assist another township with voting.  (Id. ¶ 97; Def. Ex. A at 1.)[3]  There is a

history of ill feelings between Elroy Glidden and Plaintiffs.  (Def. Ex. A at 1.)

Plaintiffs felt Ms. Glidden's presence "deterred [them] from criticizing the

City of Welcome openly."  (Amend. Compl. ¶ 98.)  Plaintiffs left after the Board

meeting, returned a bit later to vote, and Shane approached Ms. Glidden and

said, "You fu--ing bi-ch, you better sleep with one eye open."[4]  (Def. Ex. A at 1.)

This frightened Ms. Glidden, who considered the statement a threat and

reported it to the Martin County Sheriff.  (Amend. Compl. ¶¶ 100-01.)

### C.    The Prosecution of Shane McCartney

Based on the incident at the Fox Lake Township Board meeting, the Martin

County Attorney prosecuted Shane McCartney for disorderly conduct in

---

[3] The County's exhibits relate to Shane McCartney's state prosecution under
Minn. Stat. § 609.72 subdiv. 1 and are therefore "embraced by the complaint"
and/or are "part of the public record," and the Court may consider them when
deciding the instant motion.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077,
1079 (8th Cir. 1999).

[4] The Amended Complaint states that "Shane McCartney made a conversational
comment to Dianne Glidden, one-on-one, to 'sleep with one eye open.'" (Amend.
Compl. ¶ 99.)  This representation is inaccurate.  Shane admitted saying, and the
state court convicted him of saying, "You fu--ing bi-ch, you better sleep with one
eye open."  (Def. Ex. D at 1; Def. Ex. C at 3.)  The Court takes judicial notice of
Shane's plea and this judicial opinion, and declines to accept Plaintiffs' labeling
of Shane's statement as "conversational" when it is contradicted by his own
admission in state court and by a state court order.  Stutzka, 420 F.3d at 760 n.2.

violation of Minn. Stat. § 609.72 subdiv. 1(3) ("the statute").  (Amend. Compl. ¶

104.)  In relevant part, the statute states the following:

> Whoever does any of the following in a public or private place . . .
> knowing, or having reasonable grounds to know that it will, or will
> tend to, alarm, anger or disturb others or provoke an assault or
> breach of the peace, is guilty of disorderly conduct, which is a
> misdemeanor:
>                                    .   .   .
> (3) engages in offensive, obscene, abusive, boisterous, or noisy
> conduct or in offensive, obscene, or abusive language tending
> reasonably to arouse alarm, anger, or resentment in others.

Minn. Stat. § 609.72 subdiv. 1(3).

Shane filed a motion to dismiss the charges, arguing that his statements to

Ms. Glidden did not constitute "fighting words."  (Def. Ex. A.)  The court denied

his motion, holding that the "evidence possessed by the State would allow a jury

to find [Shane McCartney's] statement rose to the level of fighting words when

considering not only the statement but the circumstances under which it was

uttered."  (Def. Ex. C at 5.)  Shane pled guilty to disorderly conduct and on

September 10, 2024, was sentenced to a one-year stay of adjudication.  (Def. Exs.

D, E; Amend. Compl. ¶ 105.)

### D.    Plaintiffs' Claims

Plaintiffs assert that though they both want to continue using the phrase

"sleep with one eye open" in Martin County, they have ceased using it "and

6

similar constitutionally protected non-fighting words" in one-on-one conversations for fear of prosecution by the County Attorney for violating § 609.72 since this already happened to Shane. (Amend. Compl. ¶ 108.) Based on these facts, Plaintiffs claim that Minn. Stat. § 609.72 is facially unconstitutional (Count V) and unconstitutional as applied to Plaintiffs (Count VI). Although both claims state that both Plaintiffs have ceased their use of "sleep with one eye open" for fear of prosecution, only Victoria allegedly suffers damages as a result of these violations. (Id. ¶¶ 218, 253.) Plaintiffs assert that Shane is currently ineligible to bring First Amendment claims against the County. (Id. ¶ 190.)

## III.    DISCUSSION

The County seeks to dismiss both of Plaintiffs' claims against it (Counts V and VI) pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Rule 12(b)(6) Legal Standard for a Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Twombly, 550 U.S. at 555-56; Zutz, 601 F.3d at 848. However,

[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Zutz, 601 F.3d at 848 (citations omitted); Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Thus, the Court need not accept "conclusory allegations or legal conclusions drawn from the facts."  Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (citation omitted).

Generally, when considering a motion to dismiss, a court must ignore materials outside of the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  However, the court may consider some materials that are (1) "part of the public record," (2) "do not contradict the complaint," or (3) are "necessarily embraced by the pleadings."  Id. (citations omitted).

### B.    Relevant Minnesota Law

The following information provides a backdrop for the Parties' arguments

8

1.    <u>Matter of Welfare of S.L.J.</u>, 263 N.W.2d 412 (Minn. 1978)

In <u>S.L.J.</u>, the Minnesota Supreme Court had to decide (1) Whether § 609.72

subdiv. 1(3), was unconstitutionally overbroad or vague on its face under the

First and Fourteenth Amendments to the United States Constitution; and (2) if so,

whether the statute could be narrowly construed to sustain its constitutionality.

263 N.W.2d at 416.  The court explained that under Supreme Court precedent,

offensive-speech statutes have been found constitutional only if criminal

prosecution is permitted <u>solely</u> for "fighting words," which are words that "are

inherently likely to provoke violent reaction"; would "by their very utterance

inflict injury or tend to incite an immediate breach of the peace"; or that "have an

immediate tendency to provoke retaliatory violence or tumultuous conduct by

those to whom such words are addressed." <u>Id.</u> at 417-19 (citing, <u>inter alia</u>, <u>Cohen</u>

<u>v. California</u>, 403 U.S. 15, 20 (1971); <u>Lewis v. New Orleans</u>, 415 U.S. 130, 132

(1974); <u>State v. Hipp</u>, 213 N.W.2d 610, 614 (Minn. 1973)).  The court held that §

609.72 subdiv. 1(3) was overbroad and unconstitutionally vague.  <u>Id.</u> at 418-19.

However, the court upheld the constitutionality of the statute by narrowly

construing it to refer only to "fighting words."  <u>Id.</u> at 419 (citations omitted).

The court then had to decide if the words uttered in the case were fighting

words.  At issue were the words, "Fu-k you pigs," said by a 14-year-old girl who,

along with a friend, had been stopped on the street and questioned by police. Id. at 415. After being told to go home by the officers and getting approximately 15-30 feet away from the squad car in which the officers were sitting, one girl turned and said, "Fu-k you pigs." Id. The officers arrested the girls for disorderly conduct in violation of § 609.72 subdiv. 1(3).

The court stated,

The real test is whether, under the facts and circumstances of this case, appellant's mere utterance of these vulgar, offensive, insulting words would tend to incite an immediate breach of the peace, are inherently likely to provoke violent reaction, or had an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed. The specific facts of the case are also important because . . . whether words are "fighting words" depends on the circumstances surrounding their utterance.

Id. at 419 (quotations and citations omitted).

The court held that although the girl's words were intended to, and did, arouse resentment in the officers, under this test, more than that is required before a person can be convicted for mere speech and that there was no reasonable likelihood that her words, uttered 15 to 30 feet away from the officers, would tend to incite an immediate breach of the peace or provoke a violent reaction by an ordinary, reasonable person. Id. at 419-20.

## 2.    1991 Amendment to § 609.72

In 1991, the Minnesota Legislature amended § 609.72. subdiv. 1(3).  Minn.

Sess. Laws, 1991 Reg. Sess., Laws of Minn. 1991, Chap. 179—S.F. No. 525,

available at revisor.mn.gov/laws/1991/0/279/#laws.0.34.0 (last visited Nov. 13,

2025).

Therefore, the following version of § 609.72. § 1(3) was in effect in 1978, the

year <u>S.L.J.</u> was decided—relevant text in bold print:

> (3) Engages in **offensive, obscene, or abusive language** or in boisterous and noisy conduct **tending reasonably to arouse alarm, anger, or resentment in others.**

The following version of § 609.72. § 1(3) was in effect in 2024, the year

Shane was prosecuted—relevant text in bold print:

> (3) Engages in offensive, obscene, abusive, boisterous, or noisy conduct or in **offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others.**

As this comparison shows, despite the 1991 amendment, no substantive

changes were made to the part of the statute that regulates speech, except, as the

County stated in its brief, for being moved around to accommodate a change to

the conduct proscribed by the statute.  Accordingly, <u>S.L.J.</u> remains good law and

is relevant to the following discussion.

C.    **Whether there is a Bar to the Court's Exercise of Jurisdiction over these Claims**

The County argues that the Rooker Feldman abstention doctrine and

Younger v. Harris, 401 U.S. 37 (1971) preclude the Court from exercising

jurisdiction over these claims.  (Doc. 20 at 11-14.)

The Rooker-Feldman abstention doctrine provides that, except for habeas

corpus petitions, lower federal courts lack subject matter jurisdiction over

challenges to state court judgments.  Mosby v. Ligon, 418 F.3d 927, 931 (8th Cir.

2005) (citation omitted).  "The Rooker–Feldman doctrine is applied to cases

brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments.  The doctrine

does not apply to cases that raise independent issues."  MSK EyEs Ltd. v. Wells

Fargo Bank, Nat'l Ass'n, 546 F.3d 533, 539 (8th Cir. 2008) (citations omitted).

Similarly, in Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court

directed that a lower court abstain from hearing cases before it when (1) there is

an ongoing state judicial proceeding, (2) that implicates important state interests,

and (3) when that proceeding affords an adequate opportunity to raise any

relevant federal questions.  Middlesex Cnty. Ethics Comm. v. Garden State Bar

Ass'n, 457 U.S. 423, 432 (1982) (addressing Younger abstention requirement in

the context of bar disciplinary hearing).  The Younger abstention doctrine is

grounded in considerations of federal-state comity, including "proper respect for

state functions, . . . and the notion that state courts are equally capable of

safeguarding federal constitutional rights."  Carlson v. Cnty. of Ramsey, Minn.,

No. CV 16-765 (SRN/BRT), 2016 WL 3352196, at *5 (D. Minn. June 15, 2016)

(cleaned up).  Except in rare instances involving bad faith, harassment, or

unusual circumstances, none of which are present here, Younger abstention is

mandatory.  P.G. v. Ramsey Cnty., 141 F. Supp. 2d 1220, 1228 (D. Minn. 2001).

### 1.    The Parties' Arguments

The County argues that Younger applies because (1) there is an ongoing

state proceeding involving the exact issue here: the application of § 609.72

subdiv. 1(3) to Shane's statement: "sleep with one eye open"; (2) the matter

presents an important state issue: enforcement of criminal laws; and (3) Shane

had an adequate opportunity to raise the federal question in that state court

proceeding, as evidence by his motion to dismiss in the state district court.  (Doc.

20 at 13.)  The County states, "Plaintiffs all but acknowledge" that Younger is

relevant to their claims by "vaguely stating" that Shane is "jurisdictionally

ineligible at the moment to bring the First Amendment claims set forth in the

Amended Complaint." (Id. (quoting Amend. Compl. ¶¶ 105, 190, 226).) The

County also notes that the Rooker Feldman doctrine precludes federal courts

from exercising jurisdiction over claims that are "inextricably intertwined" with

state-court decisions. (Id. at 12 (quoting Simes v. Huckabee, 354 F.3d 823, 827

(8th Cir. 2004)) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)).)

In addition, the County argues that although Plaintiffs attempt to sidestep

the jurisdictional issue in the Amended Complaint,

> by purporting Victoria McCartney, specifically, believes the statute
> is unconstitutional and alleging only she has been injured by the
> constitutional infringement, suggesting, without directly saying, that
> these claims are being brought specifically on her behalf, [a]ny such
> assertion . . . is belied by the factual allegations in the Amended
> Complaint, which contend that Shane McCartney's First
> Amendment conduct and rights has [sic] been impacted just like
> Victoria McCartney's, and their Prayer for Relief, which seeks broad
> relief on behalf of Plaintiffs generally, including a declaration that
> Defendants have violated Plaintiffs' constitutional rights.

(Id. at 13 (citations omitted).) The County asserts that Plaintiffs' claims are

"nothing more than a thinly veiled attempt to undermine the state court criminal

proceedings against Shane McCartney" when this Court lacks jurisdiction to do

so. (Id. at 14.) Accordingly, the County asks the Court to dismiss the claims on

jurisdictional grounds under Fed. R. Civ. P. 12(b)(1). (Id.)

Plaintiffs merely respond that neither the Rooker Feldman abstention doctrine nor <u>Younger</u> prevent the Court from exercising jurisdiction because Victoria is the Plaintiff bringing these claims.

   2.    **Analysis**

While the County is correct that the Amended Complaint mentions both Plaintiffs several times, only Victoria seeks damages for Claims V and VI. (Amend. Compl. ¶¶ 219, 254.)  Moreover, it is unclear that <u>Younger</u> would even apply here because it appears there is no longer an ongoing state proceeding involving the application of § 609.72 to Shane's statement "sleep with one eye open."  On September 10, 2024, Shane was sentenced to a one-year stay of adjudication with dismissal following successful completion of one-year of unsupervised probation.  (Def. Ex. E at 1.)  The Court's inquiry reveals that there have been no documents filed in the state case since the sentencing order.  Thus, all indications are that Shane successfully completed his stay of adjudication and his state case was ripe for dismissal as of September 10, 2025.

As far as Rooker Feldman goes, although Plaintiffs complain about what happened to Shane, they do not challenge the state court judgment or invite this Court to review the judgment.  <u>See</u> <u>MSK EyEs</u>, 546 F.3d at 539.  The Amended

Complaint focuses on the possibility of future criminal prosecutions. (Amend. Compl. ¶¶ 192, 229 (stating that Plaintiffs what to use the phrase "sleep with one eye open" in one-on-one conversations in Martin County, but will not do it for fear of prosecution under § 609.72); ¶¶ 217, 252 (stating that the Martin County Attorney's threat of future prosecution under § 609.72 has caused damage to Victoria who has ceased using the phrase "sleep with one eye open" and similar "non-fighting words" in Martin County).) Plaintiffs ask the Court to find § 609.72 subdiv. 1(3) unconstitutional based on its prohibition on words other than "fighting words"; on the holding in State v. Hensel that § 609.72 subdiv. 1(2) is unconstitutional, 901 N.W.2d 166 (Minn. 2017); and on Plaintiffs' theory that subdivisions 1(2) and 1(3) are not severable. (Id. ¶¶ 214, 216, 239, 249-50.) None of this fits under Rooker Feldman. In addition, the County's reliance on the Amended Complaint's prayer for relief that seeks a declaration that Defendants have violated Plaintiffs' constitutional rights is misplaced. The Amended Complaint contains constitutional claims against Defendants other than the County and the prayer for relief does not distinguish among Defendants. (See Amend. Compl. Counts I, II, III, IV, VII.)

There is no jurisdictional bar to the Court deciding this matter.

**D.    Whether Plaintiffs have Standing to File their Challenges**

The federal courts are courts of limited jurisdiction and therefore Article III

standing is a threshold issue in every federal case.  See Nebraska v. Biden, 52

F.4th 1044, 1046 (8th Cir. 2022) (citing United States v. One Lincoln Navigator

1998, 328 F.3d 1011, 1013 (8th Cir. 2003)).  Plaintiffs argue that establishing

standing for such a challenge should not be difficult and therefore Victoria has

standing to bring her pre-enforcement challenges to § 609.72 subdiv. 1(3). (Doc.

25 at 12 (citing Christian Action League of Minn. v. Freeman, 31 F.4th 1068, 1075

(8th Cir. 2022)) (Smith, C.J., dissenting).)  The County, however, asserts that

Plaintiffs do not have standing to bring either a facial or an as-applied First

Amendment challenge to § 609.72 subdiv. 1(3) against the County.

**1.    Legal Standards**

To establish Article III standing for a constitutional challenge to a statute

on First Amendment grounds, Plaintiffs must satisfy the following requirements.

> (1) an injury in fact, (2) a causal relationship between the injury and
> the challenged conduct, and (3) that a favorable decision will likely
> redress the injury. Plaintiffs bear the burden of establishing these
> elements.
>                                    .   .   .
> Plaintiffs satisfy the injury-in-fact element if they allege an intention
> to engage in a course of conduct arguably affected with a

> constitutional interest, but proscribed by a statute, and there exists a
> credible threat of prosecution thereunder.
>
> When the alleged injury is a chill on constitutionally protected
> speech, the First Amendment gives a more lenient standing
> requirement to pre-enforcement challenges, such as this one. When
> a party brings a pre-enforcement challenge to a statute that both
> provides for criminal penalties and abridges First Amendment
> rights, a credible threat of present or future prosecution itself works
> an injury that is sufficient to confer standing.

Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1077 (8th Cir. 2024) (cleaned

up) (citations omitted) (addressing facial challenge); Susan B. Anthony List v.

Driehaus, 573 U.S. 149, 157-58 (2014) [hereinafter "SBA"]; 281 Care Comm. v.

Arneson, 638 F.3d 621, 627 (8th Cir. 2011) (stating same three elements to

establish standing for as-applied First Amendment challenge).

A plaintiff can experience two types of injuries-in-fact to support standing.

One type of injury arises when a plaintiff wishes to engage in conduct that is

affected by a constitutional interest, but is proscribed by the statute, and there is

a credible threat of prosecution. Dakotans for Health v. Noem, 52 F.4th 381,

386 (8th Cir. 2022). "The second injury occurs when a plaintiff self-censors,"

which means that the plaintiff would like to engage in speech but is chilled by

existence of the statute from doing so. Id. (citation omitted). In this context, the

decision to chill speech in light of the challenged statute must be objectively

reasonable.  Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794–95 (8th Cir. 2016) (quoting 281 Care Comm., 638 F.3d at 627).  In the First Amendment context, plaintiffs need not wait until they are prosecuted—a chilling effect may constitute an injury for standing purposes.  Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009).  That said, plaintiffs do not suffer an Article III injury unless they "must either make significant changes . . . to obey the [statute], or risk a criminal enforcement action by disobeying the [statute]." Id. at 594 (ellipses in original) (quoting St. Paul Area Chamber of Com. v. Gaertner, 439 F.3d 481, 487 (8th Cir. 2006)).  A plaintiff "must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties and abridges First Amendment rights."  Zanders, 573 F.3d at 593.  "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." 281 Care Comm., 638 F.3d at 627 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

For an as-applied challenge, plaintiffs must show that third parties will be affected differently from plaintiffs.  Josephine Havlak Photographer, Inc. v.

<u>Village of Twin Oaks</u>, 864 F.3d 905, 912 (8th Cir. 2017) (citing, <u>inter alia</u>, <u>Snider v.</u>

<u>City of Cape Girardeau</u>, 752 F.3d 1149, 1157 (8th Cir. 2014)) ("[T]he fact one can

conceive of an impermissible application of a statute is not sufficient to render it

susceptible to an overbreadth challenge.").  In addition, an injury must be

concrete and particularized, actual or imminent, not just hypothetical.  <u>SBA</u>, 573

U.S. at 158 (quotation omitted).

### 2.    Plaintiffs' Arguments

Plaintiffs argue there is a credible threat of prosecution against Victoria

and other Minnesotans and that Victoria has alleged a desire to engage in speech

that she knows puts her at risk of prosecution in Martin County: continued use

of "the non-threatening phrases criminalized by § 609.72."  (Doc. 25 at 14.)

Plaintiffs assert that because of the text of § 609.72, people like Victoria are

similarly in danger of being prosecuted for using non-threatening phrases. (<u>Id.</u>

(citing Amend. Compl. ¶ 212).)  Plaintiffs therefore argue that third parties "are

affected by the statute just as Victoria is."  (<u>Id.</u>)

Plaintiffs also note that the threat of future prosecution is real because

there is a recent history of enforcement of the statute against Shane and because

the County Attorney intends to continue enforcing the statute.  (<u>Id.</u> at 14-15

(citing Doc. 20 at 8, 11, 16, 24).)  Therefore, she has chosen to self-censor and chill

her speech rather than incur the hassle and expense that attends criminal

prosecution under § 609.72 subdiv. 1(3).  Plaintiffs assert that others likewise

could reasonably read the statute, fear criminal prosecution, and chill their own

speech in political situations, such as protests where people may want to shout

"offensive and berating messages about Muslims, Jewish people and women, but

refrain only for fear of criminal enforcement of § 609.72."  (Id. at 15-16, 18.)

They argue that the County Attorney's "vigorous enforcement" of the

statute presents Victoria and others with a real danger of prosecution "for

personally expressing their political, social, and religious beliefs in the way they

prefer.  In this case, because of the text of § 609.72 itself, Victoria's reasonable fear

of prosecution has caused her to be silent."  (Id. at 16.)  Plaintiffs state that

because of Shane's "prosecution under § 609.72 for a statement that had no true

threat of violence and no incitement, Victoria's reasonable fear of prosecution for

the same, or similar speech, has been chilled by § 609.72 enforcement that would

likely be unconstitutional if applied to her in Martin County."  (Id.)

Plaintiffs rely on SBA, in which the Supreme Court held that a pro-life

advocacy organization had standing to challenge an Ohio statute that prohibited

certain false claims made during the course of a political campaign. The
petitioners in SBA had standing for pre-enforcement review because (1) they
alleged "an intention to engage in a course of conduct arguably affected with a
constitutional interest. . . . [by pleading] specific statements they intend[ed] to
make in future election cycles"; (2) the statute at issue arguably proscribed the
future conduct they wished to challenge because the statute swept broadly and
covered the subject matter of the petitioners' intended speech; and (3) the threat
of future enforcement of the statute was substantial, most obviously because
there was a history of past enforcement against the SBA in a recent election cycle
and "past enforcement against the same conduct is good evidence that the threat
of enforcement is not 'chimerical.'"  573 U.S. at 161-64 (quotations omitted).

### 3.    Analysis

Plaintiffs do not have standing to bring their claims.  In brief, Plaintiffs'
purported chilling of their constitutionally-protected speech is objectively
unreasonable because § 609.72 subdiv. 1(3) only applies to fighting words.  If
Plaintiffs use "non-fighting words," they will not be prosecuted.  Likewise,
Plaintiffs' purported chilling of their constitutionally-protected speech based on
Shane's prosecution is objectively unreasonable for the same reason.  Plaintiffs

can use "sleep with one eye open," "watch your back," and any other phrases

they want in their "one-on-one" conversations without fear of prosecution as

long as they do so <u>in a context</u> that does not amount to a fighting words

situation.  Plaintiffs completely ignore <u>S.L.J.</u>'s holding that context matters.  263

N.W.2d at 419-20.

Moreover, their fear of prosecution based on the County's "vigorous

enforcement" of § 609.72 subdiv. 1(3) is unsupported because the only

prosecution cited is the County's prosecution of Shane for disturbing the peace

by using fighting words.  Contrary to Plaintiffs' assertion, Shane was not

prosecuted for merely using the words "'sleep with one eye open' in a one-on-

one conversation."  (Amend. Compl. ¶¶ 27, 104, 189, 225.)  He was prosecuted

for calling the wife of a city council member with whom he had a bad

relationship a "fu--ing bi-ch" before telling her to "sleep with one eye open."  In

context, this was not protected speech and violated § 609.72 subdiv. 1(3).  (<u>See</u>

Def. Ex. C at 5 (court order finding the evidence would allow a jury to find

Shane's statement "rose to the level of fighting words when considering not only

the statement but the circumstances under which it was uttered").)  Therefore,

there is no credible risk of prosecution for merely using the pedestrian phrases

"sleep with one eye open," "watch your back," or something similar in one-on-one conversations. See Animal Legal Def. Fund, 89 F.4th at 1077.

In addition, Plaintiffs present no factual context for Victoria's use of "sleep with one eye open," "watch your back," or similar phrases that establishes that Victoria is self-censoring for fear of prosecution. See id. Simply stating that Victoria does so will not suffice. An imaginative or speculative belief that Victoria may be charged under the statute is not enough to confer standing. See 281 Care Comm., 638 F.3d at 627.

Furthermore, this case can be distinguished from SBA. The statute in that case was broad. Section 609.72 subdiv. 1(3) is narrowly-construed to refer only to fighting words to save it from being overbroad. See S.L.J., 263 N.W.2d at 419. Moreover, although Plaintiffs outline a situation in which third parties might choose to chill their speech, such as political protests, which might be different from that in which Victoria might chill her speech, Plaintiffs have not established that third parties will be affected by the statute in a different way. In fact, Plaintiffs specifically state that third parties "are affected just as Victoria is." (Doc. 25 at 14.) Importantly, this argument is only in Plaintiffs' brief. The Amended Complaint only states that applying the statute to "the McCartneys"

or "Victoria McCartney" is unconstitutional.  The closest the Amended

Complaint comes to mentioning third parties is stating that "people like Victoria

McCartney are in danger of being prosecuted for using the non-threatening

phrase 'sleep with one eye open'" or similar phrases.  (Amend. Compl. ¶¶ 212,

246.)  Here, the Court's task is to review the Amended Complaint.  Fed. R. Civ. P.

12(b)(6); Zutz, 601 F.3d at 848.

Therefore, while there is a more lenient standing requirement when the

alleged injury is a chill on constitutionally-protected speech, Plaintiffs do not

meet that requirement here because only a credible, objectively reasonable threat

of present or future prosecution can constitute an injury sufficient to confer

standing.  See Animal Legal Def. Fund, 89 F.4th at 1077; Zanders, 573 F.3d at 593-

94.  Here, the threat is neither credible nor objectively reasonable.

In conclusion, Plaintiffs have asserted neither a credible threat of future

prosecution nor that any decision to chill their speech is credible or objectively

reasonable to establish an injury-in-fact.  They have ignored the context

requirement from S.L.J. to their peril.  If Plaintiffs want to engage in one-on-one

conversations, they need not "either make significant changes . . . to obey the

[statute], or risk a criminal enforcement action by disobeying" it, and therefore,

25

do not or will not suffer an Article III injury.  <u>Zanders</u>, 573 F.3d at 594.

Moreover, Plaintiffs have not credibly shown how others will be chilled from

peacefully protesting or exercising their political or religious speech rights.

Accordingly, the claims against the County Defendants will be dismissed with

prejudice for lack of standing.

## IV.    ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED:**

1.    Defendants Taylor L. McGowan's and Martin County's Motion to
Dismiss **[Doc. 18]** is **GRANTED**; and

2.    Claims V and VI of the Amended Complaint are **DISMISSED with
prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   November 14, 2025                    <u>s/Michael J. Davis              </u>
                                              Michael J. Davis
                                              United States District Court